**Louise STUMPH, Appellant,**

v.

**R.W. FOSTER, Appellee.**

**No. 49A04–8707–CV–231.**

Court of Appeals of Indiana,
Fourth District.

June 30, 1988.

Rehearing Denied Aug. 16, 1988.

Mark A. Yegerlehner, Indianapolis, for appellant.

George E. Purdy, Wicker & Purdy, Greenwood, for appellee.

MILLER, Presiding Judge.

Louise Stumph appeals from summary judgment entered against her in a malpractice action against chiropractor, R.W. Foster, claiming that during treatment for migraine headaches he negligently broke her rib. The trial court concluded that Stumph failed to make out a prima facie case by failing to present expert testimony establishing the standard of care. Stumph contends that expert testimony is unnecessary because lay persons are competent to infer negligence from the result she received from Foster's treatment. We agree and reverse.

## FACTS

Stumph visited Foster's office February 16, 1985, for chiropractic treatment to relieve pain from migraine headaches. Foster adjusted Stumph's neck and then had her lie face down on a table in order to adjust her spine. Foster pressed Stumph's back with both hands on either side of her spine. Stumph immediately experienced

pain in her left ribcage and had difficulty breathing.

During a later examination Foster took an x-ray of Stumph's chest and concluded that he had broken her rib. Over a period of several days Foster attempted to treat Stumph's broken rib by applying an electrical device to her ribcage and by administering pills. He promised her that he would "take her under his wing" until the problem was resolved. Foster reimbursed Stumph for lost wages. Stumph's interrogatory answers and deposition testimony indicate she never consulted another chiropractor or other expert in preparation for trial. No such witness was scheduled to be called at trial.

In support of his motion for summary judgment, Foster alleged by affidavit that he was a licensed chiropractor, that he exercised reasonable care, and that at no time did his treatment of Stumph fall below the required standard of care.[1] Stumph essentially rested on her pleadings submitting an affidavit reiterating facts already in the record.

## DECISION

Stumph raises several issues for our review. We need not address all these issues because a single issue is dispositive of this case. Stumph contends that expert testimony is not required to establish the requisite standard of care to survive summary judgment because lay persons are competent to infer Foster's negligence from the facts in the record. We agree.

Rarely is a negligence case appropriately disposed of by summary judgment, especially when the critical question for resolution is whether the defendant exercised the degree of care under the factual circumstances. *Doe v. Barnett* (1969), 145 Ind.App. 542, 251 N.E.2d 688. This issue is generally a question for the trier of fact, and not answerable as a matter of law. *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701. The purpose of summary judgment procedure is to terminate litigation of a cause about which there can be no factual dispute and which may be determined as a matter of law. *Central Realty, Inc. v. Hillman's Equipment, Inc.* (1969), 253 Ind. 48, 246 N.E.2d 383. Therefore, the burden is on the proponent of a summary judgment to demonstrate the absence of any genuine issue as to a material fact. All doubts and fair inferences are to be resolved in favor of the opponent. *Doe v. Barnett, supra.* The sole question is whether a legitimate and material factual controversy was shown to exist within the substantive and procedural posture of the case. *Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18.

Although Stumph is under no obligation to present evidence sufficient to establish her claim, she is, nevertheless, required to establish a prima facie case of negligence against Foster to survive summary judgment. To make a prima facie case she must show that (1) a duty was owed to her by Foster; (2) Foster breached this duty by permitting his conduct to fall below the set standard of care; and (3) she suffered a compensable injury proximately caused by Foster's breach of duty. *Dolezal v. Goode* (1982), Ind.App., 433 N.E.2d 828.

---

1. The pertinent part of Foster's affidavit is as follows:

"Comes now Robert William Foster, and being first duly sworn upon his oath, deposes and says that:
1. He is an adult and has personal knowledge of the matters set forth herein and is competent to so testify.
2. He is a Doctor of Chiropractic, and is duly licensed to practice the profession of chiropractic in the States of Indiana and Kentucky, and practices at 1759 Morris Street, Indianapolis, Indiana, and was so practicing in February and March of 1985.
3. He has personal knowledge of and is familiar with the standard of care for chiropractors practicing in Indianapolis and in the Indianapolis area in 1985.
4. He treated the plaintiff, Louise Stumph, in a professional capacity in February and March of 1985.
5. At all times during his care and treatment of plaintiff, he exercised that reasonable skill and diligence of other chiropractors similarly located and treating similar patients.
6. At no time during his care and treatment of plaintiff did his care fall below the appropriate standard of care owed the plaintiff by him."

Indiana courts have held that ordinarily the standard of care, element two (2) above, required of a doctor may not be resolved without resort to expert testimony. Expert opinion is indispensible to an evaluation of a particular defendant's conduct within the framework of the duty imposed by law. *Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18. However, expert testimony is required only when the issue of care is beyond the realm of the lay person. *Emig v. Physicians Physical Therapy Service* (1982), Ind.App., 432 N.E.2d 52.

Our supreme court recently held that the standard of care need not be established by expert opinion when the doctor's conduct was understandable by the jury without extensive technical input. *Burke v. Capello* (1988), Ind., 520 N.E.2d 439. In *Burke,* the doctor performed an operation replacing the patient's hip but failed to remove two fragments of excess cement from the wound after he had affixed the prosthesis. Justice DeBruler explained "[a] rational trier of fact could have inferred from the admissible evidence that the cement would have been in at least a hardening state and thus perceptible by sight or touch to a careful observer engaged in the process of cleansing the wound of debris, instruments, and other paraphernalia." *Id.* 520 N.E.2d at 441. Thus, the court reversed summary judgment in favor of the doctor where the doctor's motion was supported by the expert opinion of the Medical Review Panel, authorized pursuant to West's AIC 16–9.5–9–9, which concluded that the doctor had met the applicable standard of care and the patient in resistance to the motion presented no expert medical evidence.

There are a number of medical malpractice cases in Indiana which have dispensed with the expert testimony requirement in certain circumstances. Negligence has been inferred through the doctrine of *res ipsa loquitur. Funk v. Bonham* (1932), 204 Ind. 170, 183 N.E. 312. In *Funk,* a sponge was left in the abdomen of the patient after completion of the surgery, and the wound was closed up with the sponge remaining inside. No expert witness testified and no contention was made that it was skillful surgery to leave the sponge in the abdomen of the patient. Our supreme court held "[t]he handling and placing of sponges in the body in an abdominal operation might be a matter which would depend upon expert testimony, but the failure to remove such sponges after the operation, they not being necessary for any use in the abdomen after the closing of the incision, was not a matter which depended solely upon expert testimony." *Id.* 183 N.E. at 316.

The doctrine of *res ipsa loguitur* was applied similarly in the case of *Klinger v. Caylor* (1971), 148 Ind.App. 508, 267 N.E. 2d 848. In *Klinger,* the patient alleged that the surgeons failed to remove surgical padding from the patient's body after surgery. Summary judgment in favor of the surgeons was reversed because the patient's affidavit made on personal knowledge was sufficient to give rise to an inference of negligence. She was not required to present an affidavit of a medical doctor or medical expert refuting the affidavit presented by the surgeons which denied their negligence.

An examination of Indiana authority reveals other instances where expert testimony has not been required in malpractice cases. *Shirey v. Schlemmer* (1967), 140 Ind.App. 606, 223 N.E.2d 759, reversed on other grounds, 249 Ind. 1, 230 N.E.2d 534; *Walker Hospital v. Pulley* (1920), 74 Ind. App. 659, 127 N.E. 559. In *Walker Hospital,* the doctor performed surgery on the patient's leg, left fifteen inches of gauze inside the leg, and allowed the wound to heal over the gauze. The court held that expert testimony was not required to prove negligence stating "... jurors of ordinary intelligence, sense, and judgment, although not skilled in medical science, are capable of reaching a conclusion without the aid of expert testimony as to whether it is good surgery to permit a wound to heal superficially, with nearly half a yard of gauze deeply imbedded in the flesh,...." *Id.* 127 N.E. at 561.

In *Shirey, supra,* the doctor had treated the patient's fractured arm by using a metal splint and bandage covering his wrist and forearm. The arm had not begun to

heal after six months but the doctor refused to change his procedure and continued to prescribe a "wait and see" or "sit tight" treatment. The court, in dicta, stated "[e]ven lacking knowledge of what should be done, an ordinary person could perceive that under these circumstances something should be done." *Id.* 223 N.E. 2d at 762.

We have not found any Indiana chiropractic malpractice cases which address the issue of expert testimony. But, we have found two cases from other jurisdictions which have held that expert testimony is not required to create an inference of negligence when a chiropractor breaks a patient's rib during the manipulation of that patient's spine. *Hurn v. Woods* (1982), 132 Cal.App.3d 896, 183 Cal.Rptr. 495; *Mascarenas v. Gonzales* (1972), 83 N.M. 749, 497 P.2d 751. In *Hurn*, nonsuit against patient was reversed. The chiropractor had applied such great force in manipulating the patient's upper back that the patient suffered a torn sternum cartlidge, a fractured rib, and an aggravation of a pre-existing hernia. The court held that the doctrine of *res ipsa loquitur* would entitle the jury to draw an inference that the patient's injuries, sustained in parts of the body not being treated by the chiropractor were the result of negligence in administering the treatment. The court stated:

> "[i]t has been held that '[n]egligence of a chiropractor in failing to take due care to avoid injury to undiseased parts of his patient's body may be proven without resorting to expert testimony.' *Morrison v. Lane* (1935), 10 Cal.App.2d 634, 635, 52 P.2d 530. In such cases 'courts have found sufficient common knowledge and observation among laymen, regardless of expert testimony, to indicate 'that the consequences of the professional treatment were not such as ordinarily would have followed if due care had been exercised' so as to raise an inference of negligence. *Bardessono v. Michels* (1970), 3 Cal.3d 780, 789, 91 Cal.Rptr. 760, 478 P.2d 480." *Id.* 183 Cal.Rptr. at 497.

In *Mascarenas, supra,* the plaintiff complained of pains in her chest and right shoulder. After determining by x-ray that there were no fractured ribs, the chiropractor placed the patient face down on his adjusting table and pressed down on her back with both hands. The patient felt a crack or a pop and experienced pain in her back. X-rays later revealed that the patient's fifth, sixth, seventh and eighth ribs were fractured. At trial, the patient presented no expert testimony. However, the appellate court affirmed a verdict in her favor stating:

> "However, where negligence on the part of a doctor is demonstrated by facts which can be evaluated by resort to common knowledge, expert testimony is not required. This rule applies to chiropractors as well as physicians and surgeons. *Lanier v. Trammell,* 207 Ark. 372, 180 S.W.2d 818 (1944); *Malmstrom v. Olsen,* 16 Utah 2d 316, 400 P.2d 209 (1965. Compare *Woods v. Brumlop,* 71 N.M. 221, 377 P.2d 520 (1962). Should the condition be such that knowledge about it is peculiarly within the knowledge of medical men, then a court should not allow a jury to conjecture or speculate about the matter. A manipulation of the spine which results in four fractured ribs is not a condition peculiarly within the knowledge of medical men." *Id.* 497 P.2d at 753, 754.

We agree with the rationale of *Hurn* and *Mascarenas* and hold that this case falls under the rule of *Burke, supra.* From the admissible evidence, a rational trier of fact could infer that a careful chiropractor would not have broken Stumph's rib while manipulating her spine. Stumph has set forth facts which raise an inference of negligence. This inference confronts the chiropractic opinion of Dr. Foster as expressed by his affidavit. The trial court was in error in finding that there was no genuine issue of fact to be submitted. Summary judgment of the trial court is reversed, and the cause is remanded with instructions to deny Foster's motion for summary judgment.

RATLIFF, C.J., and CONOVER, J., concur.