## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 23 2016, 9:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Michael Hale
Michigan City, Indiana

ATTORNEY FOR APPELLEES

J. Richard Moore
Bleeke Dillon Crandall, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Hale,

*Appellant-Defendant,*

v.

Dr. Lolit Joseph, Nurse Lesa Wolfe, and Nurse Teresa Lennings,

*Appellees-Plaintiffs.*

August 23, 2016

Court of Appeals Case No.
77A04-1507-CT-1025

Appeal from the Sullivan Superior Court

The Honorable J. Blaine Akers, Special Judge

Trial Court Cause No.
77D01-1310-CT-575

**Vaidik, Chief Judge.**

# Case Summary

Michael Hale, a prisoner in the custody of the Indiana Department of Correction, appeals the trial court's grant of summary judgment in favor of Dr. Lolit Joseph, M.D., Lesa Wolfe, LPN, and Teresa Lennings, LPN, on his complaint alleging an Eighth Amendment violation based on deficient medical care and separately alleging medical malpractice. Hale, pro se, contends that the trial court should have held a hearing on the parties' opposing summary-judgment motions and should not have granted the defendants' motion for summary judgment. However, there was no request for a summary-judgment hearing by either party, and summary judgment was proper because Hale failed to raise a genuine issue of material fact. We therefore affirm the trial court.

# Fact and Procedural History

Michael Hale was a prisoner housed at Wabash Valley Correctional Facility when, on November 10, 2011, he fell while cleaning his cell and hit the back of his neck on a metal desk. According to Hale's complaint, he told Nurse Lennings about the accident and his pain later that night, while she was walking through his housing unit, but she did not help him. Hale submitted a request for health care on Friday, November 11, indicating that he was "in a lot of pain." Appellees' App. p. 14. Over the weekend, Hale was seen by a nurse at 2:14 a.m. on Saturday and given ibuprofen. He was seen again, later the same day, by Nurse Wolfe, who made a note that Hale was being treated with ibuprofen and that Hale "was able to move the neck/shoulders without

difficulty" when he was angry. *Id.* at 18. Nurse Wolfe also contacted a physician and obtained a verbal order for an X-ray. *Id.*

[3] The following Monday, November 14, Hale saw Dr. Joseph. She confirmed the order for an X-ray from the weekend, ordered ice and naproxen, and prescribed Vicodin for three days. Hale saw Dr. Joseph for his neck again on December 7, when she ordered physical therapy and naproxen. Hale continued seeing Dr. Joseph frequently over the next three months: (1) on December 28 for an old knee injury; (2) on January 11 for knee pain and a prescription for Mobic to treat the knee pain; (3) on January 12 for a Kenalog injection to treat the knee; and (4) on March 7 for constipation. On April 18, Dr. Joseph again saw Hale specifically for his neck. She noted that the X-ray did not indicate an injury, and she re-ordered four physical-therapy visits—Hale did not receive the physical therapy she ordered on December 7.

[4] During the same time period, from November to April, the nursing staff responded to more than two dozen requests for health care from Hale. Relevant to this appeal, Nurse Wolfe saw Hale a second time, on November 21, when Hale refused the naproxen that was ordered for his neck pain. By the time Nurse Wolfe documented Hale's refusal of the non-prescription pain

medication, he had been rejecting it for four days, since the day his prescription for Vicodin ended.[1]

[5] Hale filed a complaint in Sullivan Superior Court. Pursuant to 42 U.S.C. § 1983, Hale alleged deficient medical care in violation of the Eighth Amendment. He also stated a separate claim for medical malpractice.[2] Both parties moved for summary judgment, and the trial court granted summary judgment to Dr. Joseph, Nurse Wolfe, and Nurse Lennings without first holding a hearing.

[6] Hale appeals.

# Discussion and Decision

[7] Hale contends that the trial court erred in granting summary judgment to Dr. Joseph, Nurse Wolfe, and Nurse Lennings. Hale first argues that he was entitled to a hearing on his motion for summary judgment. However, while Indiana Trial Rule 56(C) permits a hearing on a motion for summary judgment, it does not require one unless a party requests it. Ind. Trial Rule 56(C). Hale's brief cites no motion for a hearing on the summary-judgment motions, and we

---

[1] In response to the defendants' motion for summary judgment, Hale submitted a medication refusal form to the trial court that was dated February 17, 2011, nine months before the neck injury at issue here, and the refusal form indicated that naproxen hurt Hale's stomach. After Hale began rejecting the naproxen for his neck injury in November, Dr. Joseph added omeprazole to her order for naproxen to address Hale's stomach complaints.

[2] The complaint included two additional parties and additional claims, but those were dismissed early in the proceedings, so we do not address them here.

did not find one in our review of the record. The trial court indicated in its orders that there was no request for a hearing. Appellant's App. p. 11-12. In the absence of a motion for a hearing, no hearing was required, and the trial court did not err.

[8] Hale next argues that summary judgment was improperly granted with respect to his Eighth Amendment and medical-malpractice claims. We review an order granting summary judgment de novo. *Adams v. ArvinMeritor, Inc.*, 48 N.E.3d 1, 9 (Ind. Ct. App. 2015). Summary judgment is appropriate if, after reviewing the designated evidence, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." T.R. 56(C). A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009). When the trial court has granted summary judgment, the nonmoving party has the burden on appeal of persuading us that the grant of summary judgment was in error. *Adams*, 48 N.E.3d at 9.

[9] Where, as here, cross-motions for summary judgment were filed, our standard of review does not change. *Secura Supreme Ins. Co. v. Johnson*, 51 N.E.3d 356, 359 (Ind. Ct. App. 2016), *reh'g denied*. We consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.* Indiana's summary-judgment procedure requires the movant to affirmatively negate the non-movant's claim. *Hughley v. State*, 15 N.E.3d 1000,

1003 (Ind. 2014). If the movant succeeds, then the non-movant must come forward with evidence that presents the court with a genuine issue of material fact in order to preclude summary judgment. *Id.*

[10] Beginning with Hale's Eighth Amendment claim, two elements are required to establish an Eighth Amendment violation based on deficient medical care: (1) an objectively serious medical condition and (2) an official's deliberate indifference to that condition. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). An objectively serious medical condition is one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference requires that the official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In the context of medical professionals, medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). Mere dissatisfaction or disagreement with a course of treatment is generally insufficient. *Id.* at 1013.

[11] In this case, Nurse Wolfe, Nurse Lennings, and Dr. Joseph submitted records of the ongoing care Hale received from November 11, 2011, until April 2012. The records indicate that Hale was seen promptly and repeatedly by medical staff—nurses responded to more than two dozen requests from Hale, and Dr. Joseph saw him six times after he injured his neck. Hale's neck was X-rayed,

finding nothing. Among other things, Hale was given ibuprofen over the weekend before he was examined by the doctor, prescribed Vicodin for three days, and then treated with naproxen and Mobic for pain in his neck and a knee injury. He was also prescribed omeprazole to address his stomach pain. This is sufficient to negate the element of "deliberate indifference."

[12] Hale argued that the delay in providing the physical therapy ordered by Dr. Joseph, Nurse Lenning's refusal to treat him on the night he fell, and the failure to renew his prescription for Vicodin created a genuine issue of material fact with respect to deliberate indifference. First we note that nothing in the record indicates the defendants were responsible for the delay in physical therapy, making the delay immaterial to Hale's complaint. Relevant to this complaint, the Eighth Amendment does not require that prisoners receive "unqualified access to health care," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), nor are they entitled to demand specific treatments, *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Therefore, whether Nurse Lennings did or did not treat Hale on the night he fell is immaterial because Hale is not entitled to instantaneous care for every injury—only for actual medical emergencies. And Hale's preference for Vicodin over the non-prescription pain relievers that were used to treat his neck pain also does not create a genuine issue of material fact with respect to deliberate indifference.

[13] Finally, Hale argues his malpractice claim should have survived summary judgment. In a medical-malpractice action based on negligence, the plaintiff must establish (1) a duty on the part of the defendant in relation to the plaintiff;

(2) failure on the part of the defendant to conform its conduct to the requisite standard of care; and (3) an injury to the plaintiff resulting from that failure. *Scripture v. Roberts*, 51 N.E.3d 248, 251-52 (Ind. Ct. App. 2016).[3]

[14] At issue here is whether the defendants met the standard of care required for Hale's injury. To establish the applicable standard of care and a breach of that standard in a medical-malpractice case, a plaintiff generally must present expert testimony. *Methodist Hosps., Inc. v. Johnson*, 856 N.E.2d 718, 721 (Ind. Ct. App. 2006). There is a narrow exception to the requirement of expert testimony for cases where the defendant's conduct is so obviously substandard that a fact-finder need not possess medical expertise in order to recognize the defendant's breach of the applicable standard of care. *Id.* The exception typically arises when physicians leave foreign objects in a patient's body because no independent explanation is required to understand that the object should have been removed, *id.*, but other medical-malpractice actions have also been sent to the jury without the aid of expert testimony. *See, e.g.*, *Gold v. Ishak*, 720 N.E.2d 1175 (Ind. Ct. App. 1999) (expert testimony not required because fire occurring during surgery near an instrument that emits a spark was used in proximity to a

---

[3] Ordinarily, a claim of medical malpractice must be reviewed by a medical-review panel before a medical-malpractice action may be commenced in court. Ind. Code § 34-18-8-4. However, there are exceptions such as Indiana Code section 34-18-8-5, which allows a medical-malpractice claim to be filed if there is a signed writing indicating that the parties agree to proceed without a medical-review panel. Because the original complaint submitted by Hale indicated that he filed his complaint with the Indiana Department of Insurance and "any responses are attached to the complaint[,]" Appellees' App. p. 124, and neither party nor the trial court has indicated that there is an issue with Hale's filing, we assume that his complaint complied with the statute for purposes of this appeal.

source of oxygen), *trans. denied*; *Stumph v. Foster*, 524 N.E.2d 812 (Ind. Ct. App. 1988) (expert testimony unnecessary to conclude a chiropractor negligently broke his patient's rib during treatment for migraine headaches).

[15] The defendants submitted affidavits from Dr. Joseph and Nurse Wolfe as expert testimony that the care Hale received complied with the applicable medical standards, and each of them attached the portion of Hale's file that formed the basis of her opinion. The defendants also designated Hale's relevant medical records as evidence. This is sufficient evidence to shift the burden to Hale to establish a genuine question of material fact as to whether the defendants met the standard of care required.

[16] However, Hale merely asserted that "[t]he standard of care concerning a condition or injury causing pain is to stop or reduce [the pain] as much as possible." Appellees' App. p. 140. Hale cited no legal or medical authority to support this proposition, and we cannot agree with his further assertion that "[a]ny layman would know this to be true[.]" *Id.* Narcotic painkillers like Vicodin require a prescription precisely because the finer points of when, where, and how to administer them are beyond the purview of the everyman. Expert testimony is required to establish a genuine dispute of material fact with respect to whether the defendants properly managed Hale's pain in this case, and he has failed to supply that.

[17] The defendants are entitled to summary judgment as a matter of law on both the Eighth Amendment and malpractice claims.

[18] Affirmed.

Barnes, J., and Mathias, J., concur.