Teresa WIDMEYER, Appellant–Plaintiff,

v.

Dan E. FAULK, D.D.S., Appellee–Defendant.

No. 41A01–9212–CV–416.

Court of Appeals of Indiana, First District.

May 4, 1993.

---

Scott Allen Benkie, Indianapolis, for appellant-plaintiff.

Karl L. Mulvaney, Nana Quay–Smith, Jill L. McCrory, Bingham, Summers, Welsh & Spilman, Indianapolis, for appellee-defendant.

BAKER, Judge.

Plaintiff-appellant Teresa Widmeyer appeals the trial court's grant of summary judgment in favor of defendant-appellee Dan E. Faulk, D.D.S., entered in her medical malpractice action. She raises two issues for our review, which we consolidate and restate as: whether the trial court properly granted summary judgment in Dr. Faulk's favor because Widmeyer failed to establish a genuine issue of material fact regarding whether Dr. Faulk's conduct fell below the applicable standard of care.

## FACTS

Widmeyer's lower right molar needed to be extracted due to decay and periodontic problems. The tooth was the back anchor for a three-unit metal bridge; to extract the tooth, the bridge had to be severed. Widmeyer's general dentist referred her to Dr. Faulk, an oral surgeon. Widmeyer went to Dr. Faulk on August 17, 1988, to have the work performed.

Dr. Faulk used a low speed handpiece with a separating disc attachment to cut the solder joint. All did not go well, however; Widmeyer suffered a one-centimeter laceration on her tongue. Dr. Faulk sutured the wound and completed extracting Widmeyer's tooth. Widmeyer returned to Dr. Faulk's office on August 19, 1988, to have a suture in her tongue replaced, and again on August 22, 1988, for treatment of "dry socket," a painful condition resulting from the extraction. She did not return for further treatment after August 22, 1988.

On August 14, 1990, Widmeyer filed a proposed complaint with the Medical Malpractice Division of the Indiana Department of Insurance alleging Dr. Faulk negligently lacerated and treated her tongue. The Division determined Dr. Faulk was not a "qualified health care provider" under the Indiana Medical Malpractice Act. IND. CODE 16–9.5–1 *et. seq.* On September 24, 1990, Widmeyer filed a complaint for damages in the Marion County Superior Court. Widmeyer later developed a tumor on her tongue, and on September 17, 1991, she requested leave to amend her complaint to include her most recent malady. The court granted leave on September 25, 1991, and Widmeyer filed an amended complaint the same day. The parties filed cross-motions for summary judgment, and, following a hearing conducted July 22, 1992, the trial court granted summary judgment in Dr. Faulk's favor. Widmeyer now appeals the grant of Dr. Faulk's motion for summary judgment and the denial of her motion for summary judgment.

## DISCUSSION AND DECISION

### Summary Judgment

Summary judgment is appropriate only when no genuine controversy exists. *O'Neal v. Throop* (1992), Ind.App., 596 N.E.2d 984, 986, *trans. denied.* In reviewing the propriety of the grant of summary judgment, this court applies the same standard as the trial court. *Id.* The party seeking summary judgment has the initial burden of demonstrating no genuine issue of material fact exists and he or she is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Whiteco Industries, Inc. v. Nickolick* (1991), Ind.App., 571 N.E.2d 1337, 1339, *trans. denied.* Once the movant presents pleadings, depositions, answers to interrogatories, admissions, or affidavits showing he or she is entitled to summary judgment, the non-movant must set forth specific facts establishing a genuine issue of material fact. *Ogden Estate v. Decatur County Hospital* (1987), Ind.App., 509 N.E.2d 901, 902, *trans. denied.* The non-movant cannot simply rest on his or her pleadings, however. *Id.* A failure to establish a disputed issue of material fact will result in the grant of summary judgment provided the movant is entitled to judgment as a matter of law. *Id.*

### Standard of Care

The elements of a medical negligence case are the same as any negligence case. The plaintiff must show by a preponderance of the evidence (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty by performing below the applicable standard of care, and (3) the plaintiff suffered a compensable injury

proximately caused by the defendant's breach. *Stumph v. Foster* (1988), Ind. App., 524 N.E.2d 812, 814. Doctors are not held to a standard of perfect care, however. Instead, "a physician must exercise that degree of care, skill, and proficiency exercised by reasonably careful, skillful, and prudent practitioners in the same class to which he belongs, acting under the same or similar circumstances." *Vergara v. Doan* (1992), Ind., 593 N.E.2d 185, 187.

■ Generally, the plaintiff must present expert testimony to establish the professional's performance fell below the applicable standard of care. *Stumph, supra,* at 815. Failure to come forward with expert testimony will usually subject the plaintiff to a summary disposition. *Kerr v. Carlos* (1991), Ind.App., 582 N.E.2d 860, 863. When a jury can understand the medical professional's conduct without technical explanation, however, expert testimony is unnecessary. *Malooley v. McIntyre* (1992), Ind.App., 597 N.E.2d 314, 319.

### *Widmeyer's Theories* [1]

In this case, Widmeyer presented three theories to establish the existence of a genuine issue material fact regarding whether Dr. Faulk provided negligent medical treatment causing the laceration in her tongue. First, Widmeyer argued she demonstrated a material issue of fact by presenting expert testimony that Dr. Faulk's conduct fell below the applicable standard of care. Next, she argued it was within the jurors' common knowledge that Dr. Faulk's conduct fell below the applicable standard of care because tongue lacerations do not ordinarily occur when due care is exercised.

Finally, Widmeyer argued she established an inference of negligence under the doctrine of *res ipsa loquitur,* both by applying the common knowledge exception and by presenting expert testimony that her type of injury does not ordinarily occur absent negligence.

### (1) *Expert Testimony*

■ We address first Widmeyer's argument she established a genuine issue of material fact by presenting expert testimony that Dr. Faulk provided negligent care. We disagree with Widmeyer's interpretation of her expert's conclusions.

Widmeyer introduced the affidavit of Mark A. Smith, D.D.S., a general dentist, in which Dr. Smith stated Dr. Faulk's use of a separating disc in dento-dissection [2] fell below the standard of care normally exercised. Dr. Smith indicated that a high speed drill coupled with a bur attachment was a better choice for dento-dissection. In his deposition, however, Dr. Smith admitted that as a general dentist, he was not competent to testify as to the standard of care of an oral surgeon, that he had not seen Widmeyer's records prior to preparing his affidavit, that his assumption Dr. Faulk performed a dento-dissection was incorrect, and that his affidavit was not germane to cutting a soldering joint, the procedure Dr. Faulk actually performed. In the end, Dr. Smith conceded he was unable to conclude whether Dr. Faulk's conduct fell below the applicable standard of care. Widmeyer presented no other expert testimony concerning Dr. Faulk's treatment resulting in the laceration.

1. Widmeyer's complaint also alleged that after lacerating her tongue, Dr. Faulk negligently treated the laceration which resulted in the growth of a tumor. During the summary judgment proceedings, however, Widmeyer failed to present evidence supporting this theory. To survive summary judgment as to this issue, Widmeyer relied entirely on the causation affidavit of Bruce Sterman, M.D., an ear, nose and throat doctor, in which Dr. Sterman stated that Widmeyer's enlarged mass "was a consequence of the trauma she received to the tongue from a dental drill...." *Record* at 101–02.

 The trial court granted Dr. Faulk's motion for summary judgment on the issue of negligent treatment of the laceration, and Widmeyer has failed to present a cogent argument challenging the ruling in this appeal. Because failure to present a cogent argument results in waiver on appeal, *Herron v. Herron* (1983), Ind.App., 457 N.E.2d 564, 567 n. 3, the issue of whether Dr. Faulk negligently treated Widmeyer's laceration is not before this court.

2. The record reveals a "dento-dissection" involves splitting the roots in a multi-rooted tooth so they may be removed separately when extracting the tooth.

In contrast, Dr. Faulk submitted affidavits of Dr. Charles H. Redish, D.D.S., an oral surgeon and professor of oral surgery, and L. Michael Stropes, D.D.S., an assistant professor and oral surgeon at Indiana University Dental School. After reviewing Dr. Faulk's records, Dr. Redish concluded "Dr. Faulk's care and treatment of Teresa Widmeyer complied in all respects with the standard of care for dentists practicing in the area of Oral and Maxillofacial Surgery." *Record* at 81. It was Dr. Stropes's opinion that a low speed handpiece with an attached separating disc was appropriate for cutting the soldered joint of a bridge. *Record* at 106.

Even taking as true the facts Widmeyer asserts, as we must do, *see Whiteco Industries, supra,* at 1139, Widmeyer's expert clearly failed to raise a genuine issue of material fact whether Dr. Faulk's treatment was negligent. Dr. Smith's affidavit simply did not disclose that Dr. Faulk was negligent, while both Dr. Redish's and Dr. Stropes's affidavits disclosed Dr. Faulk was not negligent.

### (2) *Common Knowledge*

■ Widmeyer also contends it was within the jurors' common knowledge that the type of laceration she suffered does not ordinarily occur when an oral surgeon exercises due care. Armed with this inference of negligence, she argues a material issue of fact existed making the grant of summary judgment inappropriate. We do not agree Dr. Faulk's conduct was understandable without an expert's technical aid.

Certain medical malpractice actions have survived summary judgment without supporting expert testimony. Such actions have typically arisen from leaving a foreign object in the patient's body; juries can understand without independent explanation the object should have been removed. *See Burke v. Capello* (1988), Ind., 520 N.E.2d 439 (expert testimony unnecessary when orthopedic surgeon failed to remove two pieces of cement, totalling one-inch in diameter, after affixing prosthesis for hip replacement); *Ciesiolka v. Selby* (1970), 147 Ind.App. 396, 261 N.E.2d 95 (jury did not need expert testimony to conclude doctor negligently left mesh in patient's abdomen). Other types of medical malpractice actions have also been sent to the jury without the aid of expert testimony. In *Stumph, supra,* for example, this court concluded the jury did not need expert testimony to decide a chiropractor negligently broke his patient's rib during treatment for migraine headaches.

The "common knowledge" exception has also found application in certain dental malpractice claims. *See Merola v. Stang* (1961), Fla.App., 130 So.2d 119 (jury did not need expert testimony to know that slicing through the patient's lower lip to the point of the chin was not the accepted method of drilling a tooth); *Neal v. Wilmoth* (1961), Ky., 342 S.W.2d 701 (no expert opinion as to negligence was required when dentist lost his balance, fell into his patient's lap, and jammed the drill deep into his patient's throat); *cf. Chubb v. Holmes* (1930), 111 Conn. 482, 150 A. 516 (expert testimony was necessary on issue of negligence where dentist cut plaintiff's tongue during tooth extraction); *Yandrich v. Blair* (1979), 65 Ohio App.2d 65, 415 N.E.2d 996 (plaintiff needed expert testimony to show dentist negligently extracted wisdom tooth which resulted in nerve damage to left side of patient's tongue).

Under the facts in this case, we conclude a jury does not possess the independent knowledge and expertise necessary to render an intelligent decision on the negligence issue. Widmeyer sought treatment from Dr. Faulk upon her general dentist's referral. As an oral surgeon, Dr. Faulk completed two years of training beyond general dentistry, and he is referred the more difficult oral surgery cases. When the laceration occurred, Dr. Faulk was using a sophisticated dental instrument under a very specific set of dental circumstances. It is simply beyond the "common knowledge" of laypersons to know whether Dr. Faulk's treatment fell below the standard of care for oral surgeons. Without the aid of expert testimony, Widmeyer failed to raise a genuine issue of material fact regarding Dr. Faulk's care.

### (3) *Res Ipsa Loquitur*

Widmeyer also invokes the doctrine of *res ipsa loquitur* to show Dr. Faulk's medical treatment fell below the applicable standard of care. The doctrine creates an evidentiary presumption of negligence based upon circumstantial evidence. *Kranda v. Houser–Norborg Medical Corp.* (1981), Ind.App., 419 N.E.2d 1024, 1042, *appeal dismissed,* 459 U.S. 802, 103 S.Ct. 23, 74 L.Ed.2d 39 (1982) (citing *Carpenter v. Campbell* (1971), 149 Ind.App. 189, 194, 271 N.E.2d 163, 167).

To establish the doctrine of *res ipsa loquitur,* one must show: (1) the injury is one which ordinarily does not occur in the absence of negligence; (2) the injury was caused by an agency within the defendant's exclusive control; and (3) the injury was not due to any voluntary act on the plaintiff's part. *Brinegar v. Robertson Corp.* (1990), Ind.App., 550 N.E.2d 812, 814, *trans. denied.* Proof the injury is one that does not ordinarily occur but for an act of negligence may be grounded upon either common knowledge or expert testimony. *Kranda, supra,* at 1042. Whether Widmeyer showed her injury was such an injury is the issue now before us.[3]

Paralleling the common knowledge doctrine discussed above, Widmeyer argues a layperson could conclude, without expert testimony, an oral surgeon would not ordinarily lacerate his patient's tongue in the absence of negligence. As we concluded earlier, however, Widmeyer's "common knowledge" argument is unconvincing given the sophistication of the procedure used to sever a three-unit bridge. Whether Widmeyer's injury was one which ordinarily does not occur in the absence of negligence was beyond the realm of a layperson's knowledge.

The expert testimony Widmeyer introduced to prove the type of injury she received ordinarily occurs only when there is a failure to use due care is also unpersuasive. When asked in his deposition whether it was always negligent to have tissue injury when performing dental procedures intra-orally, Dr. Smith responded, "No ... it's not necessarily negligence." *Record* at 155. In response to the question whether he still believed Dr. Faulk negligently lacerated Widmeyer's tongue, Dr. Smith replied, "I would say it is no longer my opinion of that. I can't really rule one way or the other." *Record* at 157. Dr. Smith admitted, "I certainly don't know enough information or enough about the situation." *Record* at 157. In contrast, Dr. Faulk introduced a supplemental affidavit of Charles H. Redish, D.D.S., in which the oral surgeon stated that "laceration of a patient's tongue or mouth tissues during a procedure involving use of a separating disc for cutting a solder bridge joint prior to tooth extraction can occur absent any negligence by the oral surgeon." *Record* at 80.

A jury would be unable to evaluate Dr. Faulk's conduct without technical aid, and Widmeyer failed to introduce expert testimony that her injury is one that ordinarily occurs only in the absence of due care. Widmeyer has, accordingly, failed to establish the first prong of the doctrine of *res ipsa loquitur,* or to establish a genuine issue of material fact regarding its application here.

### CONCLUSION

Widmeyer failed to prove Dr. Faulk's conduct fell below the applicable standard of care, and she failed to establish the existence of a genuine issue of material fact regarding his conduct. The trial court properly granted Dr. Faulk's motion for summary judgment and denied Widmeyer's motion.

Judgment affirmed.

NAJAM and STATON, JJ., concur.

---

**3.** Although there is a genuine issue of fact whether Widmeyer moved her head and tongue thereby contributing to her injury, we do not address this issue in light of our resolution of the first element of *res ipsa loquitur:* whether the injury ordinarily does not occur in the absence of negligence.